IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)



FILED

JAN - 9 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

ROBERT DONNERT  :

and  :

DAVID DONNERT  :

and  :

TIFFANY HARTMANN  :

              Plaintiffs,  :    Civil Action No.: *1:13CV 40*

                      :                 *TSE/TRJ*

vs.  :

FELD ENTERTAINMENT, INC., d/b/a  :
RINGLING BROS. AND BARNUM  :
& BAILEY CIRCUS  :

              Defendant.  :    **(JURY TRIAL DEMANDED)**

                      :

## COMPLAINT

    Plaintiffs, Robert Donnert, David Donnert and Tiffany Hartmann, by and through their

undersigned attorneys, hereby aver the following by way of Complaint against Defendants:

### THE PARTIES

    1.    At all material times, Plaintiff Robert Donnert was an employee of Defendant

Feld Entertainment, Inc. d/b/a Ringling Bros. and Barnum & Bailey Circus.

    2.    At all material times, Plaintiff David Donnert was an employee of Defendant Feld

Entertainment, Inc. d/b/a Ringling Bros. and Barnum & Bailey Circus.

    3.    At all material times, Plaintiff Tiffany Hartmann was employed by Defendant

Feld Entertainment, Inc. d/b/a Ringling Bros. and Barnum & Bailey Circus.

4.     At all material times, the Plaintiffs were employed by Defendant Feld Entertainment, Inc. d/b/a Ringling Bros. and Barnum & Bailey Circus to provide and support a horse riding act with juggling and acrobatics and a comedy horse riding act.

5.     Upon information and belief, Defendant Feld Entertainment, Inc. d/b/a Ringling Bros. and Barnum & Bailey Circus ("Feld Entertainment") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at Fairfax County, Virginia.

6.     At all relevant times, Defendant Nicole Feld was the Executive Vice President and Producer of Defendant Feld Entertainment.

## JURISDICTION

7.     The plaintiffs are citizens of a different state than each of the defendants.

8.     The amount in controversy in this matter exceeds the value of $75,000, exclusive of interest and costs.

9.     The United States District Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

## VENUE

10.     Pursuant to 28 U.S.C. §1391 and Local Rule 3 (C), venue is proper in the United States District Court for the Eastern District of Virginia, Alexandria Division, because it is the judicial district within which the employment contract that serves as a basis for the lawsuit requires a dispute be brought.

## BACKGROUND

11.     Plaintiffs Robert and David Donnert (collectively, the "Donnert Plaintiffs") are brothers and are the fifth generation of their family to work training performance horses.  The

2

Donnert Plaintiffs have spent their entire lives providing professional performances to mobile circuses and as representatives for their industry.

12.    Since 1990, the Donnert Plaintiffs have performed with various circuses in the United States and Canada, as well as with various circuses in Hungary, Holland, Italy, Sweden and other European countries.

13.    The Donnert Plaintiffs have trained – for their acts and for the acts of others – more than 25 horses. Training horses requires anywhere from 10-20 hours per week to train a horse to perform circus acts. Trick training can consist of 2-3 years of training, and necessarily includes training outdoors, the necessity of building a relationship or bond with the trainer and "seasoning" and getting the horse comfortable working in different environments with loud noises, bright lights, physical discomforts, and strange or threatening animal scents.

14.    The Donnert Plaintiffs have always maintained a strong safety record for themselves, their co-workers and their animals. They are meticulous about the appropriate safety precautions, such as rubber mats, stalling, traveling and exercise. During tours, the employees diligently ensure that the horses take a break and are turned out for relaxation time at various farms throughout the country.

15.    In early 2010, the Donnert Plaintiffs were working with the Hanneford circus performing their comedy and juggling horse acts. As of early 2010, the employees owned and had trained the following horses as part of their act:

> a.  **Cornbread.** Cornbread is a comedy horse. The Plaintiffs bought
>     Cornbread in November 2007. In addition to the training from the
>     Plaintiffs, Cornbread was trained by his prior owner, Mr. Gaylord

3

Maynard, for 7 years for this comedy routine. Until the issues posed in this case, Cornbread had not had prior performance problems.

b. **Bear Claw.** Bear Claw is a comedy horse. The Plaintiffs bought Bear Claw in November 2007. Bear Claw was first trained for 3 years by Mr. Gaylord Maynard until his death. The Plaintiffs then continued to train Bear Claw and used him for the first time before a live audience in September 2010.

c. **Karolyi.** Karolyi is a juggling horse. The Plaintiffs bought Karolyi in 2005, at which time he had been trained for riding. Over the years, the Plaintiffs completed Karolyi's training for juggling, acrobatics and fire on horseback.

d. **Suarez.** Suarez is a juggling horse. The Plaintiffs bought Suarez in July 2002, at the age of 4. Suarez was trained exclusively by the Plaintiffs solely for the juggling and acrobatics on horseback act. Suarez performed his first live audience show after 1 year of training and has been working with the Plaintiffs ever since.

16.    At all material times, the Donnert Plaintiffs were employees of Defendant Feld Entertainment pursuant to an employment contract (the "Contract") dated April 21, 2010 and effective through December 13, 2011, whereby the Donnert Plaintiffs agreed to perform in the Gold Unit of the Ringling Bros. and Barnum & Bailey Circus "one or both" of two horse riding acts: a "Horse Riding Act with Juggling and Acrobatics" and a "Comedy Horse Riding Act." Defendant Nicole Feld ("Feld") negotiated and executed the Contract on behalf of Defendant Feld Entertainment. A copy of the Contract is attached as Exhibit A.

4

17.     The Donnert Plaintiffs and Defendant Feld Entertainment also entered into a Rental Agreement (the "Rental Agreement") effective from April 27, 2010 through December 13, 2011, whereby the Donnert Plaintiffs agreed to provide four of their horses to Defendant Feld Entertainment for use in the two acts the Plaintiffs agreed to perform.  The horses initially leased were "Cornbread", "Bear Claw", "Suarez" and "Karolyi".  Defendant Nicole Feld ("Feld") negotiated and executed the Contract on behalf of Defendant Feld Entertainment.  A copy of the Rental Agreement is attached as Exhibit B.

18.     In order to enter into the contracts with Defendant Feld Entertainment and move to the Ringling Circus, the Donnert Plaintiffs had to relinquish their seniority with their employer, Hanneford Circus, as well as cancel a contract for the fall of 2010.

19.     Feld orally agreed that Robert Donnert's wife, Plaintiff Tiffany Hartmann, would be allowed to join the show as a traveling teacher for the Red Unit.

20.     Feld orally agreed that the Donnert Plaintiffs would be placed in charge of and work with the animal department and all of the horses and elephants.

21.     The Contract and the Lease Agreement provided that both the Donnert Plaintiffs and Feld Entertainment agreed that the "health, safety and welfare" of the animals – namely horses – was "of the utmost importance" or of "paramount importance" to the parties.

22.     It is well-known in the entertainment industry that "animal safety" is construed to include both the safety of animals as well as humans.

23.     Despite agreeing to the contracted-for safety work rules, the Donnert Plaintiffs frequently observed polished concrete in various venues in which Feld Entertainment operated. Polished concrete is a known slip hazard for hoofed horses.  Upon observation of the hazard, the Donnert Plaintiffs would ask Feld Entertainment management to arrange for placing rubber mats,

a known mitigation technique for this hazard, to minimize the chance that a horse would be injured on the polished concrete. Often, the requests were ignored.

24.     On May 7, 2010, the Donnert Plaintiffs observed polished concrete at a venue in Bossier City, Louisiana. They again requested that Feld Entertainment staff place rubber mats between the building entrance and the arena. The requests were ignored. On May 8, 2010, the Donnert Plaintiffs' juggling horse, Karolyi, got spooked while entering the building and fell on the polished concrete, suffering a grievous injury.

25.     In June 2010, Feld Entertainment revealed its intention to move the Donnert Plaintiffs' act to the circus's Red Unit in November 2010.

26.     In an addendum to the Contract dated October 1, 2010, the parties left most of their earlier contracts in place, but made certain changes. A copy of the October Addendum is attached as Exhibit C. Defendant Hartmann was added to the contract and quit her teaching job, and the acts were moved to the larger Red Unit. The revised contract also called for:

> a. Probation. The Plaintiffs would be placed on probation for "the first 4 weeks of the Act's employment on the Red Unit Tour," thereby subject to termination "without cause." *Ex. C, at* ¶ 6.
>
> b. Work Rules. Feld Entertainment could discipline and terminate the Plaintiffs if the Plaintiffs (1) "disrupt[ed] or impede[d] Employer's creative and production value and direction of the production," or (2) failed to comply with the safety work rules or animal safety requirements. *Ex. C, at* ¶ 8.
>
> c. Number of Horses. The Plaintiffs agreed to lease 6 horses and that "all horses may perform in the production numbers" as directed by Feld

Entertainment. "At least 4" horses were to perform in the acts. *Ex. C. at* ¶ 12-13.

27.     To comply with the new contractual requirements, the Donnert Plaintiffs purchased 2 new horses to be added to the juggling act. These horses were Hidalgo, a 4-year-old Percheron-Paint cross with some prior training in driving and Volteo, a 4-year-old Fresian-Percheron cross who was able to be ridden in a saddle.

28.     The Plaintiffs finished their tour with the Gold Unit on November 14, 2010, in Indiana, and then drove to Tampa, Florida to arrive at the Red Unit on November 16. They began working with the Red Unit on November 20, 2010 at the Florida State Fairgrounds.

29.     During the first 24 days with the Red Unit, the Plaintiffs and Feld Entertainment worked cooperatively, and there were no disagreements over what Feld Entertainment calls "creative elements."

30.     On or around December 14, 2010, after replacing the original show director with a new director who had no known prior experience working with animals or animal safety, Feld Entertainment changed the show order so that the Plaintiffs' comedy horse act would immediately follow the circus's tiger act. Contrary to industry practice, the new show order was implemented without any input from the Plaintiffs or an expert.

31.     The new show order created dangers to both the Plaintiffs' horses and the Plaintiffs themselves. Cornbread, the horse used for the comedy act, exhibited sudden and dramatic changes in behavior consistent with a "spooked" demeanor, as well as an erratic and unpredictable performance during the routine. At one point, Cornbread bit Plaintiff David Donnert's toes during a routine.

32.    In an attempt to get the new show order to succeed, the Plaintiffs spent far more practice time with Cornbread and Bear Claw using positive reinforcements and treats to get them to perform under the new circumstances.  It became clear that Cornbread would not perform as expected and was becoming an increasing threat to himself and those around him.

33.    Horse trainers and long-time industry professionals contacted by the Plaintiffs advised the Plaintiffs that the show order would not work because, to their knowledge, this was the first known time that a horse act was working so closely after a tiger act.

34.    The Plaintiffs repeatedly approached Feld Entertainment's management and expressed their concerns about the safety problems associated with the new show order.  By expressing their concerns to management, Plaintiffs properly conducted themselves pursuant to the Contract and Rental agreement, as well as standard rehearsal practice.  During rehearsals, performers are encouraged to report possible safety issues so that issues could be discussed with management.

35.    When confronted with the issue, Feld Entertainment failed to investigate the safety issue consistent with what a competent animal professional would have done.  Rather than focus on why a seasoned horse with many years of flawless performance suddenly was unwilling to perform, management refused to investigate and did not consult with a recognized industry safety and animal professional.

36.    Management also insisted that the Plaintiffs continue to perform the comedy horse act as ordered by the show director.

37.    On December 28, 2010, at the end of the comedy act, Cornbread, still refusing to perform the most vulnerable parts, trampled on Plaintiff David Donnert's leg, and pulled a

muscle in his own leg.  Numerous Feld Entertainment executives and many co-employees witnessed the trampling.

38.     Immediately following the trampling, Plaintiff David Donnert confronted Defendant Nicole Feld and other Feld Entertainment executives.  During the conversation, David told the executives that the show order was not safe.  Defendant Nicole Feld refused to talk about the problem and directed David to the animal department.  The main animal presenter recommended giving the horse a tranquilizer, which would have caused the horse to lose control, which would have only made the situation more dangerous.

39.     On December 29, 2010, Plaintiff Robert Donnert approached Defendant Nicole Feld to discuss the events of the previous day and concerns about the show order.  Robert worked to express his concerns about the safety of both the horse as well as the safety of performers and other staff.  Robert informed Defendant Nicole Feld that one horse (Karolyi) was still lame because of failed safety protocols and another horse (Cornbread) was spooked, refused to work, and was now injured.  He informed her that he had consulted multiple industry professionals for second opinions, and that they had unanimously agreed that the new show order would not work.

40.     Defendant Nicole Feld's only concern during that conversation was why Plaintiff Robert Donnert had sought second opinions outside the show.  Robert advised that he was compelled to do so because there were no competent animal professionals on staff.  Robert stated that, if the show order was not changed, someone was going to get hurt because a spooked horse would get loose and injure other employees in the area.  Defendant Nicole Feld replied that the show order would not change, though she never gave a reason for that position.

41.    On December 29, 2010, the parties executed another addendum to the Contract (the "December Addendum"). The December Addendum provided a one-time payment to Plaintiffs for rehearsal time that had not been previously issued.

42.    The Plaintiffs began rehearsing the comedy act with Bear Claw, who was to replace the injured Cornbread. Bear Claw immediately began exhibiting signs of fear and, like Cornbread, refused to put himself in the most vulnerable position in the act. With the same safety problems repeating themselves, the Plaintiffs once again voiced their concerns to Defendant Feld Entertainment executives. Defendant Feld Entertainment's lone proposed solution was to allow additional rehearsal time so Bear Claw could acclimate to the show.

43.    On December 30, 2012, Defendant Feld Entertainment's veterinarian examined Cornbread to be sure he could lie down mechanically without any problem. The Plaintiffs had no difficulty getting Cornbread to perform the trick in the absence of the tiger act. The next day, in his discharge recommendations, a veterinarian from the Surgi-Care Center for horses stated "Since Cornbread's issues all seem to be secondary to his anxiousness over performing when the big Cats are exiting the arena, it would be ideal to reposition his act to a time when the big Cats are not in the ring if at all possible." A copy of the discharge recommendations was supplied to Defendant Feld Entertainment, and is attached as Exhibit D.

44.    On January 4, 2011, the Donnert Plaintiffs met with Defendant Feld Entertainment directors of talent Vinicio Murillo and David Kiser. During the meeting, the Donnert Plaintiffs again outlined their concerns about animal and human safety brought about by the new show order and suggested alternatives to vitiate the human and animal safety problems. Specifically, the Donnert Plaintiffs suggested (1) moving the comedy horse act to another spot in the show order; (2) getting a second opinion on the current show order from a Ringling or any

other horse trainer; (3) having a brief interlude of a few minutes before Cornbread followed the tiger act; and (4) the Donnert Plaintiffs moving back to the Gold Unit. Messrs. Murillo and Kiser offered to bring in another animal trainer to consult, but otherwise denied the other suggestions. The animal trainer never appeared to offer a second opinion.

45.     The next circus appearance was from January 5-9, 2011, at the St. Petersburg Times Forum in Florida. The Donnert Plaintiffs' horse juggling act continued to perform as specified under the Contract, but the comedy horse act was not asked to perform at any spot in the new show order.

46.     On January 9, 2011, after the final show in Florida, David Kiser handed the Plaintiffs a written notification that Defendant Feld Entertainment was releasing the Plaintiffs from the contracts. The termination letter explicitly and exclusively was based on the probationary period as set forth in the Contract and amended in the October Addendum. The termination letter was silent regarding any purported refusal to perform by the employees. A copy of the termination letter is attached as Exhibit E.

47.     Defendant Feld Entertainment elected not to replace the horse acts, thereby saving a substantial sum.

### COUNT I: BREACH OF CONTRACT (Termination)
#### Plaintiffs v. Feld Entertainment

48.     Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

49.     Plaintiffs and Defendant Feld Entertainment executed, and later amended, an employment contract setting forth the rights and obligations of the parties in the continued employment arrangement between the parties.

50.     The October Addendum to the Contract noted that the Plaintiffs would be placed on probation for "the first 4 weeks of the Act's employment on the Red Unit Tour," thereby making the Plaintiffs subject to termination "without cause" only during that probationary period.

51.     The Plaintiffs began working on the Red Unit Tour on November 20, 2010.

52.     Defendant Feld Entertainment terminated its employment relationship with the Plaintiffs on January 9, 2011. In the termination letter provided to Plaintiffs, Defendant Feld Entertainment relied exclusively on the October Addendum's probation provisions as justification for the termination. *See*, Exhibit E.

53.     The probationary period actually expired no later than December 20, 2010.

54.     Defendant Feld Entertainment breached the Contract with Plaintiffs by terminating their employment relationship without cause.

55.     As a result of the breach of the employment contract, Plaintiffs have suffered in excess of $75,000 in damages.

WHEREFORE, Plaintiffs, Robert Donnert, David Donnert and Tiffany Hartmann demand judgment against Feld Entertainment in the excess of $75,000, in an amount to be proven at trial, plus interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

## COUNT II: BREACH OF CONTRACT (Animal Welfare)
### Robert Donnert and David Donnert v. Feld Entertainment

56.     Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

57.     In addition to an employment Contract, Plaintiff Robert Donnert and Plaintiff David Donnert entered into a Lease Agreement with Defendant Feld Entertainment, specifically concerning the lease of the Donnerts' horses for use in the circus acts.

58.     The Contract and Lease Agreements each contained agreements that animal safety was of the paramount concern or of the utmost importance to Defendant Feld Entertainment, and obligated the parties to ensure animal safety.

59.     Defendant Feld Entertainment breached this obligation by certain actions that demonstrated that animal safety was not its paramount concern or of the utmost importance. Specifically, Feld Entertainment did not:

        a.  Provide for the placement of rubber mats on polished concrete surfaces, despite the common industry knowledge that polished concrete presented a slipping hazard to shoed horses;

        b.  Advise the Donnert Plaintiffs that it would place nylon carpeting on the area where the Plaintiffs' horses would rehearse, rather than the Plaintiffs' own carpet, which resulted in brush burn to Cornbread's exposed joints each time he got up and down;

        c.  Consider the dangers, to both animal and humans, posed by altering its show order so that the Plaintiffs' comedy horse act immediately followed a tiger act;

        d.  Consult the Plaintiffs, other Ringling trainers, or outside industry professionals regarding the efficacy of altering the show order to place the comedy horse act immediately following the tiger act;

    e.  Change the show order following the incident on December 28, 2010, wherein Cornbread, a trained horse with no prior history of such actions, trampled Plaintiff David Donnert's leg as a result of the show order change placing the act immediately after the tiger act.

60.    As a direct and proximate result of these breaches of contract, the Donnert Plaintiffs and their horses have suffered damages in excess of $75,000.

    WHEREFORE, Plaintiffs, Robert Donnert and David Donnert demand judgment against Defendant Feld Entertainment in excess of $75,000, in an amount to be proven at trial, plus interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

## COUNT III: BREACH OF LEASE
### Plaintiffs v. Feld Entertainment

61.    Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

62.    Plaintiffs and Defendant Feld Entertainment executed a lease to provide horses and eluipment and under which Defendant would provide various expenses and medical care and upkeep.

63.    Under the Lease Defendant Feld Entertainment was obligated to pay Plaintiffs to provide horses.

64.    Defendant Feld Entertainment did not honor its obligations under the Lease by wrongfully terminating the Plaintiffs.

65.    Defendant Feld Entertainment agreed to provide for the care of Karolyi.

66.    Defendant Feld Entertainment wrongfully breached its agreement to care for Karolyi.

67.     As a direct result of the breach of the lease and agreement to care for Karolyi, Plaintiffs have suffered in excess of $75,000 in damages.

WHEREFORE, Plaintiffs, Robert Donnert, David Donnert and Tiffany Hartmann demand judgment against Feld Entertainment in the excess of $75,000, in an amount to be proven at trial, plus interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

## COUNT IV: BREACH OF CONTRACT (Wage and Hours)
### Plaintiffs v. Feld Entertainment

68.     Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

69.     Plaintiffs and Defendant Feld Entertainment executed, and later amended, an employment contract setting forth the rights and obligations of the parties in the continued employment arrangement between the parties.

70.     Under the Contract and its addenda, Defendant Feld Entertainment was obligated to pay Plaintiffs for their employment duties.

71.     Defendant Feld Entertainment did not honor its obligations under the Contract and addenda as the obligations relate to payments to Plaintiffs.

72.     As a direct result of the breach of the employment contract, Plaintiffs have suffered in excess of $75,000 in damages.

WHEREFORE, Plaintiffs, Robert Donnert, David Donnert and Tiffany Hartmann demand judgment against Feld Entertainment in the excess of $75,000, in an amount to be proven at trial, plus interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

## COUNT V: OSHA – SAFETY-BASED RETALIATION

## Plaintiffs v. Feld Entertainment

73.     Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

74.     Section 11(c) of the Occupational Safety and Health Act prohibits employers from "discharg[ing] or in any manner discriminat[ing] against any employee because such employee has filed any complaint...under or related to this Act...or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act." 29 U.S.C. § 660(C)(1).

75.     Complaints made by the Plaintiffs to executives of Defendant Feld Entertainment related to safety conditions for themselves and their horses at their workplace.

76.     The complaints about animal and human safety were made in good faith in an attempt to remedy unsafe conditions.

77.     The Plaintiffs never refused to perform its comedy horse act and did not otherwise refuse to engage in their normal job activity, as set forth in the Contract between the parties.

78.     Defendant Feld Entertainment wrongfully and retaliatorily terminated the Plaintiffs, and did so after the conduct at issue in this case and set forth above, and in violation of Defendant's statutory and other duties.

79.     As a direct result of these wrongful acts and omissions, the Donnert Plaintiffs and their horses have suffered damages in excess of $75,000.

WHEREFORE, Plaintiffs, Robert Donnert and David Donnert demand judgment against Defendant Feld Entertainment in excess of $75,000, in an amount to be proven at trial, plus interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

## COUNT VI: RETALIATORY PERSONNEL ACTION (Florida)
### Plaintiffs v. Defendant Feld Entertainment

59.   Plaintiffs reiterate and reallege the preceding paragraphs as if fully rewritten and restated herein at length.

60.   Florida Statute 448.102(3) prohibits a private employer of 10 or more employees from taking any retaliatory personnel action (including discharge) against an employee because the employee has objected to, or refused to participate in, any activity which is in violation of any federal or state law, including OSHA or state-law equivalent, that applies to the employer and pertains to the business.

61.   Defendant Feld Entertainment fired the Defendants because the Defendants objected to safety issues in violation of OSHA or state-law equivalent, or, alternatively, because Plaintiffs steadfastly believed the show presented animal and human safety risks and refused to follow "creative input" in the show that posed those risks.

62.   Defendant Feld Entertainment did not consult with the Plaintiffs, other Ringling animal trainers or any outside industry professionals regarding animal and human safety concerns regarding the show order, electing instead to terminate the Plaintiffs and forego a comedy horse act entirely.

63.   As a direct result of the retaliatory personnel action taken by Defendant Feld Entertainment, Plaintiffs have lost wages, benefits and other damages in excess of $75,000.

WHEREFORE, Plaintiffs, Robert Donnert, David Donnert and Tiffany Hartmann demand judgment against Feld Entertainment in excess of $75,000, in an amount to be proven at trial, plus compensatory damages, treble damages, interest, court costs, attorneys fees and other such and further relief as this Honorable Court deems just and proper.

### JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

ROBERT DONNERT, DAVID DONNERT AND
TIFFANY HARTMANN
*By Counsel:*

Craig D. Roswell, #33901
Niles, Barton & Wilmer, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
(410-783-6486 fax
cdroswell@nilesbarton.com

Of Counsel:
R. Wayne Pierce
THE PIERCE LAW FIRM, LLC
133 Defense Highway, Suite 106
Annapolis, Maryland 21401-7015
Work: 410-573-9955
Fax: 410-573-9956
E-mail: wpierce@adventurelaw.com
(*Pro hac vice* motion to follow)

*Attorney for Plaintiffs, Robert Donnert,*
*David Donnert and Tiffany Hartmann*

4837-8973-1090, v. 1